IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| JENNIFER THOMPSON, | § | |
|     Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | Cause No. <u>3:23-CV-1441</u> |
| ACY MCGEHEE, individually | § | |
| and in his official capacity as Mayor | § | Plaintiff Demands |
| of the City of Godley; | § | Trial By Jury |
| THE CITY OF GODLEY, TEXAS; | § | |
| MATTHEW CANTRELL, individually | § | |
| and in his official capacity as Interim | § | |
| Police Chief of the Godley Police | § | |
| Department; GODLEY POLICE OFFICERS | § | |
| JEREMY ARBUTHNOT Badge #980, | § | |
| SPENCER TEMPLER Badge #985, | § | |
| and A. RIZZO Badge #983, | § | |
| in their individual and official capacities, | § | |
|     Defendants. | § | |

## COMPLAINT

Plaintiff Jennifer Thompson ("Thompson" or "Plaintiff"), upon information and belief, alleges in support of her Complaint the following:

### I.      INTRODUCTION

1.    This is a civil rights action brought under 42 U.S.C. § 1983 in which Plaintiff, a former elected member of the Godley City Council, seeks actual, exemplary, and punitive damages to redress deprivations under color of state law of federal rights secured to her under the First, Fourth, and Fourteenth Amendments to the United States Constitution. In retaliation for exercising her First Amendment right to freedom of speech and with intent to chill her speech, Defendants conspired

to, and did prevent Plaintiff from expressing political views with which Defendants disagreed.

2.      Minutes before a February 7, 2023 city council meeting began, Defendants knowingly and/or with reckless disregard to Plaintiff's federal rights used their governmental power as policymakers and under the color of state law to arrest Plaintiff, strip-search her, and confine her in jail on the pretense of a crime that Plaintiff did not commit and of which Defendants have no valid evidence. Instead, Defendants pointed to acts Plaintiff lawfully committed pursuant to the Texas Open Meetings Act, and that Defendants believed were committed in furtherance of her official duties as a duly elected member of city council, and while exercising her rights under the First Amendment. Defendants' unlawful arrest of Plaintiff caused Plaintiff to be unreasonably and unlawfully seized, searched, and deprived of her liberty and freedom of speech.

3.      By arresting Plaintiff when they did, Defendants were successful in implementing policy choices that Defendants believed would have failed if Plaintiff had been present at the city council meeting.

4.      As a result of Defendants' actions, Plaintiff's constitutional rights were violated and she suffered physical and mental injuries, among other damages.

## II.      PARTIES

5.      Plaintiff THOMPSON is a former elected member of the Godley City Council, and at all times relevant hereto resided in the City of Godley, Johnson County, Texas.

6.    Defendant ACY MCGEHEE ("McGehee" or "Mayor") is the former Mayor of the City of Godley. At all relevant times, McGehee was a policymaker for the City of Godley, and resided in the City of Godley, Johnson County, Texas. McGehee is sued in both his official and individual capacity. He may be served with process at 308 W. Links Drive, Godley, Texas 76044.

7.    Defendant THE CITY OF GODLEY ("City") is a municipal corporation and Type A General-Law municipality governed by Chapter 22 of the Texas Local Government Code. The City operates the Godley Police Department ("GPD"), and as such is the public employer of the Defendant officers sued here. The City may be served with process by serving the City Secretary at Godley City Hall, 200 W. Railroad St., Godley, Texas 76044.

8.    Defendant MATTHEW CANTRELL ("Cantrell"), is the Interim Police Chief of the Godley Police Department. At all relevant times, Cantrell was a policymaker for the Godley Police Department, and resided in the City of Godley, Johnson County, Texas. Cantrell is sued in both his official and individual capacity. He may be served with process at the Godley Police Department, 200 W. Railroad St., Godley, Texas 76044.

9.    Defendant Police Officer JEREMY ARBUTHNOT ("Arbuthnot") Badge #980 is a GPD police officer, and at all relevant times, acted in that capacity as agent, servant, and/or employee of Defendant City and within the scope of his employment. Arbuthnot is sued in both his official and individual capacity. He may be served with process at the Godley Police Department, 200 W. Railroad St., Godley, Texas 76044.

10.     Defendant Police Officer SPENCER TEMPLER ("Templer") Badge #985 is a GPD police officer, and at all relevant times, acted in that capacity as agent, servant, and/or employee of Defendant City and within the scope of his employment. Templer is sued in both his official and individual capacity. He may be served with process at the Godley Police Department, 200 W. Railroad St., Godley, Texas 76044.

11.     Defendant Police Officer A. RIZZO ("Rizzo") Badge #983 is a GPD police officer, and at all relevant times, acted in that capacity as agent, servant, and/or employee of Defendant City and within the scope of her employment. Rizzo is sued in her official and individual capacity. She may be served with process at the Godley Police Department, 200 W. Railroad St., Godley, Texas 76044.

12.     At all relevant times, Defendants were acting under the color of state and local law. Defendant City is responsible for enforcing the state and local laws as well as all Godley Police Department policies. Said policies were authored, directed and implemented by municipal policymakers, including Cantrell and McGehee and all Defendants were acting under the color of state statutes, local ordinances, regulations, policies, customs and usages of the State of Texas and/or the City of Godley.

## III.    JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1343, which provides for original jurisdiction in this court for all suits brought pursuant to 42 U.S.C. § 1983; and by 28 U.S.C. § 1331 because this action arises under the United

States Constitution and federal law. The City of Godley is located within Johnson County, which is within the Northern District of Texas, Dallas Division.

## IV.   FACTUAL BACKGROUND

### A.   The City of Godley is a Type A General-Law Municipality.

14.   The City of Godley is incorporated as a Type A General-Law Municipality. Godley City Code § 30.01.

15.   As a Type A General-Law Municipality, the City of Godley operates under the aldermatic form of government and is therefore governed by Chapter 22 of the Texas Local Government Code. Godley City Code § 30.01; Tex. Local Gov't Code § 22.001. The City of Godley is not divided into wards, consequently, the Godley City Council consists of a mayor and five councilmembers (aka aldermen) who are each elected at large to serve two-year terms. Tex. Local Gov't Code §§ 22.031(b), 22.035. The mayor does not vote on city council agenda items unless his vote is needed to break a tie. Tex. Local Gov't Code § 22.037 (a).

16.   At a regular city council meeting, a quorum consists of three councilmembers (aka aldermen). Tex. Local Gov't Code § 22.039. At a special city council meeting, however, a quorum consists of four councilmembers. *Id.* The mayor does not count toward a quorum in either type of meeting. *Id.* All city officials, including the city administrator, secretary, police chief, and municipal attorney, serve "at the pleasure of" or the "at the will of" the city council.  *See* Godley City Code §§ 32.01, 32.05, 32.07(H), 32.08(c).

17.     The Godley City Code requires that regular meetings of the city council are supposed to be held every first Monday of each month, unless "otherwise set forth by the Mayor and Council and duly posted notice." Godley City Code § 31.01.  But under a resolution enacted by the city council majority, during the time frame relevant here, regular meetings took place the first Tuesday of each month and, if agenda items were timely submitted, on the third Tuesday of each month. Special city council meetings were held "as needed."

18.     Under the Texas Open Meetings Act ("TOMA") the City is required to post notice of agenda items for any forthcoming city council meeting at least 72 hours before the scheduled meeting. Tex. Gov't. Code §§ 551.041, 551.043. While TOMA requires the City to post such notice "on a physical or electronic bulletin board at a place convenient to the public in the city hall [,]" TOMA does not prohibit additional postings in additional locations or forums. Tex. Gov't Code § 551.050(b). During the relevant timeframe, the City had no policies or procedures prescribing *who* at the City was responsible for posting these notices of city council meetings.

**B.     Plaintiff is elected to the Godley City Council in May 2022.**

19.     In May of 2022, Plaintiff was duly elected in a special election to serve the remaining term of an at-large city council seat vacated early by Ryan Bailey. Plaintiff's city council term would expire in May 2023.

**C.     In November 2022, after the chief of police resigned, Plaintiff began asking questions about city business.**

20.     On November 1, 2022, at the beginning of a regular city council meeting, each member of the city council, including Plaintiff, received at the dais a "blue

folder" containing information suggesting that city officials, including long-time City Administrator David Wallis ("Wallis"), and other department heads and city staff were refusing to follow city rules and procedures set forth in the City's Handbook. This information was compiled and submitted by Jason Jordan ("Jordan"), the Chief of Police who, according to Jordan, was forced to resign by Wallis because Jordan had challenged Wallis' management decisions and official actions too many times. The Mayor announced that Jordan's last day with the city was November 4, 2022.

21.    Without prior notice to the council members, at the same November 1 city council meeting, the Mayor appointed Defendant Cantrell to serve as "interim" police chief and asked the council to rubber-stamp his appointment.  Plaintiff voted no, but the motion passed.

22.    After reviewing the contents of the blue folder, Plaintiff submitted in writing to the Mayor, City Secretary Jessica Hill ("Hill"), and Administrator Wallis a request for public information, including an asset inventory list stating where city property was located, its value, and how and when city property was disposed. Plaintiff was denied this information despite her multiple requests.

23.    On November 8, 2022, due to the council being deprived adequate notice about Jordan's resignation and the Mayor's intent to appoint Defendant Cantrell to the interim position, Plaintiff, along with councilmembers Michael Papenfuss ("Papenfuss") and Roger Cornelison ("Cornelison"), called for a special city council meeting to discuss, among other action items, Jordan's reinstatement while the city council investigated the circumstances of Jordan's sudden and alleged forced

departure. But this meeting never occurred. On November 28, 2022, Godley City Attorney Cass Calloway ("Calloway") notified the council that a special meeting could not be held in November due to lack of a quorum. According to Calloway, Mayor McGehee, and councilmembers Jan Whitehead ("Whitehead") and Mary Ann Matthews ("Matthews") were unavailable.

### D.    Plaintiff speaks on matters of public concern during city council meetings held on December 6 and 12, 2022.

24.    On December 6, 2022, during a regular city council meeting, Plaintiff flagged several issues, including the city's lack of an asset inventory list, as well as purchasing and human resources policies and procedures that failed to ensure transparency and accountability to the public.

25.    Plaintiff also voiced concern about a sexual harassment complaint that triggered an investigation of councilmember Papenfuss. The complaint, which Plaintiff characterized as "organized" and possibly filed in retaliation for public criticism voiced by Papenfuss against a city department head, was brought by Defendant Arbuthnot and two other city employees.

26.    Plaintiff also raised concern about the fact that city police vehicles were being serviced by Administrator Wallis's relative without a city contract and at great expense to the city.

27.    Plaintiff was also critical of the Mayor's decision to appoint Defendant Cantrell to serve as the interim police chief, an appointment Plaintiff opposed because she believed Cantrell to be unqualified for the position.

28.     Some agenda items were not reached on December 6 due to the meeting running long, so a special meeting was scheduled for Monday, December 12, 2022, to consider the remaining agenda items.

29.     On December 12, 2022, during the continuation of the December 6 city council meeting, Plaintiff managed to carry several of her motions with the help of councilmembers Papenfuss and Cornelius, including a motion to make city hall's hours of operation comply with the City Handbook, which the Mayor opposed, as well as a motion to post the position of Chief of Police as soon as possible, which had not yet been done.

30.     Councilmembers Whitehead and Matthews opposed most of Plaintiff's motions and the Mayor appeared frustrated with Plaintiff's ability to carry motions that councilmembers Whitehead and Matthews and the Mayor opposed.

31.     Because of the refusal by Secretary Hill and Administrator Wallis to provide the public information previously requested by Plaintiff, and in their absence at the December 12 meeting, Plaintiff was forced to "table" several agenda items for consideration at the next city council meeting.

**E.     The City Administrator and City Secretary abruptly resign**.

32.     On December 12, 2022, at the conclusion of the special city council meeting, the Mayor announced that Administrator Wallis had abruptly resigned due to "health reasons and other stuff that's going on." Wallis's last day was scheduled for December 23, 2022.

33.     On December 16, 2022, Secretary Hill tendered her resignation via email and informed the council that her last day was Friday, December 30, 2022.

**F.      Secretary Hill refuses to post an updated city council agenda for a December 27, 2022 special meeting that was later cancelled.**

34.     On Thursday, December 22, 2022 at 10:37 a.m. Secretary Hill emailed Plaintiff attaching a "working agenda" for a specially called city council meeting scheduled to occur on Tuesday, December 27, 2022. Hill instructed Plaintiff to "forward any additional items [Plaintiff] wish[ed] to discuss ..." at the meeting. Hill informed Plaintiff that she planned to post the agenda at city hall no later than 5:00 p.m. that same day.

35.     Plaintiff immediately responded to Hill's email asking why the "tabled" items from the December 12 meeting were not included in the working agenda.

36.     Hill responded to Plaintiff's query at 4:30 p.m. explaining Hill was not present at the December 12 meeting, she had not reviewed the video recording of the meeting, and she was therefore unaware of what items were tabled. Hill asked Plaintiff to send her a list of the tabled agenda items.

37.     Plaintiff responded to Hill at 4:47 p.m. and informed her that Plaintiff would "send [her tabled agenda items] shortly." The list consisted of approximately twelve additional items.

38.     Despite knowing Plaintiff was gathering the list, at approximately 5:22 p.m *before* Plaintiff was able to send the list, Hill sent to Plaintiff a final posted agenda that omitted all of Plaintiff's tabled agenda items.

39.    In response, at approximately 5:45 p.m., Plaintiff emailed an *updated* agenda to Hill and instructed Hill to post it at city hall. Hill later refused.

40.    In the meantime, Plaintiff copied Papenfuss on the email she sent to Hill which attached the updated agenda. Papenfuss posted the updated agenda to his alderman's Facebook page, which Papenfuss believed would be posted by Hill at city hall in the normal course. When Papenfuss learned on December 24 that Hill had refused to post the updated agenda, Papenfuss immediately removed it from his Facebook page, replaced it with the version of the agenda that Hill had originally posted at city hall, and explained his mistake.

41.    In addition, before these events, Plaintiff consulted legal counsel at the Texas Municipal League, who advised Plaintiff that city council members were not prohibited from "creating and posting the agenda [themselves] as a stop-gap measure" under circumstances when city staff refused to post.

42.    Although Plaintiff, Papenfuss and Cornelius appeared at the special city council meeting on Tuesday, December 27, 2022, at 6:30 p.m. the rest of the council did not appear thereby defeating a quorum for a special meeting.

G.    **Plaintiff submits a written complaint about statements she interpreted to be threats of retaliation made by Defendants Cantrell and Arbuthnot and pushes for a forensic audit of city finances, prompting the city attorney's resignation.**

43.    In the meantime, on December 12, 2022, in the presence of the Mayor and City Attorney Calloway, Plaintiff expressed concern about statements made by Defendants Cantrell and Arbuthnot. These statements were made during meetings she attended at the Godley Police Department at the request of the officers, with

11

whom she met to discuss matters that were occurring within the City of Godley, including the complaint that triggered the former Chief of Police Jordan's recent resignation.

44.    Plaintiff explained that at those meetings, the officers attempted to dissuade Plaintiff from casting votes in contravention to the traditional way the city had conducted its business. Plaintiff told City Attorney Calloway she understood this to mean that if she continued to voice her opposition to the Mayor and other city officials, GPD would retaliate against her. City Attorney Calloway directed Plaintiff to submit a written complaint.

45.    On December 22, 2022, Plaintiff submitted written complaints to Defendant McGehee and City Attorney Calloway stating she believed she had been threatened with retaliation by Defendants Cantrell and Arbuthnot. On December 27, 2022, Plaintiff received an email from City Attorney Calloway confirming he had forwarded Plaintiff's written complaints to Defendants Cantrell and Arbuthnot.

46.    On January 3, 2023, during a regular city council meeting, Plaintiff pushed for an independent forensic audit of the city's finances due in part to Administrator Wallis's abrupt departure. Both the Mayor and the city attorney disagreed that the audit was necessary. After arguing with Plaintiff about the audit, City Attorney Calloway left in the middle of the meeting and later resigned.

**H.    Defendants initiate criminal proceedings, arrest, and detain Plaintiff minutes before a city council begins.**

47.    On December 29, 2022, Plaintiff received an email from Defendant Arbuthnot which stated in part:

Officer S. Templer and Officer Arbuthnot are working on an investigation that you have been named in. We need to speak with you in regard to the investigation. . .

Thank You
Godley Police Department
Patrol Officer J. Arbuthnot #980
Office #817-389-2500

48.    On February 7, 2023, forty-five days after Plaintiff *updated* a city council agenda for which she sought to give timely public notice about items she intended to discuss at the city council meeting to *comply* with state law, Defendant Arbuthnot signed an affidavit in which he intentionally, knowingly or with reckless disregard for the truth, made statements and relied on statements made by others, including Defendant McGehee, that were false to support a warrant for Plaintiff's arrest for allegedly tampering with a government record in violation of Texas Penal Code § 37.10 (a)(1).

49.    Defendants knew or should have known Plaintiff had committed no crime; and they acted with malice by illegally obtaining the arrest warrant on the same day that a city council meeting was scheduled. Texas Penal Code § 37.10 (a)(1) provides: "A person commits an offense if he knowingly makes a false entry in, or false alteration of, a governmental record." Arbuthnot's affidavit submitted in support of Plaintiff's arrest for tampering with a government record did not attach the allegedly "falsified" government record, and the text of the affidavit was entirely void of a single reference to a "false" entry or "false alteration" contained within the updated agenda that Plaintiff did not post and for a meeting that did not occur on December 27, 2022.

13

50.    Defendant Arbuthnot also made numerous false statements in his affidavit, including that Plaintiff had "forged" Hill's signature; and that Hill was the "only one responsible for assembling" agenda items for the city council meetings even though Arbuthnot did not and could not point to a single state or local law/rule delegating that responsibility solely to the city secretary.

51.    Indeed, despite knowing that Plaintiff had obtained a legal opinion advising her that city council members were authorized to create and post the agendas themselves, Defendants relied solely on the unsubstantiated and incorrect statements made by the Mayor, who is neither an attorney nor knowledgeable about municipal law, that Plaintiff was unauthorized to update or post the city council's agenda.

52.    After illegally procuring the arrest warrant, and despite the absence of exigent circumstances requiring law enforcement to take Plaintiff into immediate custody, Defendants located Plaintiff while she was sitting in her vehicle in front of city hall preparing for a city council meeting scheduled to begin at 6:30 p.m. and arrested her at 5:32 p.m. with malice to prevent Plaintiff from attending the city council meeting.

53.    Defendant Police Officers Templer and Rizzo without warning and without advising her of the charge, handcuffed and falsely arrested Plaintiff and detained her in a police car for several minutes in front of her fellow councilmembers and constituents with malice to embarrass and humiliate her.

54.    Plaintiff was transported to the Johnson County Sheriff Department where she was strip searched, told to spread her buttock cheeks, and cough.

55.    Plaintiff was held in jail for approximately 12 hours.

56.    Plaintiff was arraigned at approximately 6:30 a.m. on February 8, 2023, and a $1500 bond was set.

57.    After posting a surety bond on February 8, 2023, Plaintiff was released from custody under conditions of release. While being released, she was told that her earrings, given to her by her grandmother and confiscated by jailors, were lost.

58.    When the Johnson County Attorney's Office was presented with the criminal case initiated by the City against Plaintiff, it declined to continue the criminal proceeding.

I.    **Plaintiff's absence from the February 7 meeting permitted the Mayor to cast votes that broke ties in his favor, and Plaintiff's complaints against officers were deemed "unfounded."**

59.    At the city council meeting in which Plaintiff was prevented from being present because of the arrest, the Mayor cast the deciding vote on several items he wanted carried and that he knew Plaintiff intended to vote against, including but not limited to approving his hiring choices for interim city attorney and interim city secretary.

60.    During the city council meeting, when a citizen raised concern about the appropriateness of Plaintiff's arrest, the interim city attorney, chosen by the Mayor, falsely stated that the city "had nothing to do with" the criminal charges brought against Plaintiff, when the City had everything to do with it.

61.    In a letter dated May 23, 2023, the interim city attorney, who was chosen by the Mayor, informed Plaintiff that Plaintiff's complaints against Defendants Cantrell and Arbuthnot were "unfounded."

62.    The Mayor resigned on June 20, 2023, after a petition of no confidence was initiated by the citizens of Godley.

## V.    FIRST CAUSE OF ACTION
### Pursuant to 42 U.S.C. §1983 (False Arrest/*Franks* Claim)

63.    Plaintiff re-urges and incorporates by reference the preceding paragraphs.

64.    The Fourth Amendment is violated when a (1) government agent (2) knowingly and intentionally or with reckless disregard for the truth (3) includes a false statement in an affidavit that purports to support a warrant, and (4) the false statement is necessary to the finding of probable cause.  *See Franks v. Delaware*, 438 U.S. 154, 171 (1978); *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018).

65.    As alleged above, Defendants Arbuthnot and McGehee knowingly, intentionally, or with reckless disregard for the truth made false statements in the probable cause affidavit that were necessary to the finding of probable cause.

66.    As alleged above neither valid evidence to justify Plaintiff's arrest nor legal cause or excuse to seize, search and detain her existed.

67.    In detaining Plaintiff until and through arraignment without a fair and reliable determination of probable cause, Defendant City by its policymakers, agents, servants, and employees abused its power and authority under the color of state

and/or local law by charging innocent persons, like Plaintiff, with crimes they did not commit, to shut down and chill their speech.

68.    Upon information and belief, Defendant policymakers Cantrell and McGehee, even though they knew, or should have known, Plaintiff had not committed a crime, either directed Plaintiff be arrested or authorized the arrest so as to prevent Plaintiff from exercising her right to freedom of speech at the city council meeting, or agreed to a subordinate's decision to arrest Plaintiff, with knowledge that the subordinate officer was the subject of a written complaint made by Plaintiff and said subordinate officer intended to chill Plaintiff's speech.

69.    Upon information and belief, it was the policy and/or custom of Defendant City to inadequately supervise and train its officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents and employees.

70.    As a result of these policies and customs, the officers, staff, agents and employees of Defendant City believed that their actions would not be properly monitored by its supervisory officers and that misconduct would not be investigated or sanctioned but would be tolerated.

71.    In addition, to prevent arrestees from bonding out without having to spend the night in jail, the City had and has a policy, custom, and/or practice of arresting persons at particular times to ensure they are detained in jail for an excessive period of time prior to arraignment.

72.     These policies and customs were known or should have been known by Defendants Cantrell and/or McGehee, who were each policymakers for the city, but who were nevertheless deliberately indifferent to the constitutional rights of arrestees, and such policies and customs were the moving force leading to the constitutional violations of Plaintiff's rights alleged herein.

73.     Through Defendant's acts and omissions, Defendant City, acting under color of state law and within the scope of its authority, in gross and wanton disregard of Plaintiff's rights, subjected Plaintiff to an unlawful arrest and detention, in violation of the Fourth and Fourteenth Amendments of the United States Constitution and the laws of the State of Texas, and such violation was clearly established and objectively unreasonable.

74.     By reason of the foregoing, Plaintiff suffered mental injuries, deprivation of liberty and privacy, terror, humiliation, damage to reputation and other psychological injuries, and other damages.   All of said injuries may be permanent.

## VI.     SECOND CAUSE OF ACTION
### Pursuant to 42 U.S.C. §1983 (Malicious Prosecution)

75.     Plaintiff re-urges and incorporates by reference the preceding paragraphs.

76.     A malicious prosecution claim lies for damages arising from (1) the commencement of an original criminal proceeding against Plaintiff by Defendant, if (2) the criminal prosecution related thereto ended without conviction, (3) no probable cause existed for such proceeding, and (4) the Defendant acted with malice. *See*

*Thompson v. Clark*, 142 S.Ct.1332, 1335 (2022); *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023) (citing *Gordy v. Burns*, 294 F.3d 722, 727 (5th Cir. 2002).

77.     Defendants began the criminal proceeding against Plaintiff with malicious intent in retaliation for Plaintiff's exercise of her right to free speech, to prevent Plaintiff from attending the city council meeting on February 7, 2023 where Defendants believed Plaintiff would express political views with which they disagreed, and to shut down and chill her right to free speech going forward.  In addition, Defendants initiated a criminal complaint with knowledge Plaintiff had committed no crime and no probable cause existed.

78.     The complained of criminal charges brought by the Defendants against Plaintiff were terminated in Plaintiff's favor.

79.     There existed no probable cause for the arrest complained of herein.

80.     By reason of Defendants' acts and omissions, Defendants acting under color of state law and within the scope of their authority in gross and wanton disregard of Plaintiff's rights, deprived Plaintiff of her liberty when they maliciously prosecuted her and subjected her to an unlawful and excessive detention, in violation of her rights under the Fourth and Fourteenth Amendments of the United States Constitution, and such violation was clearly established and objectively unreasonable.

81.     Upon information and belief, Defendant policymakers Cantrell and McGehee, even though they knew or should have known Plaintiff had not committed a crime, either directed that the criminal proceeding be initiated, authorized the

initiation of the criminal proceeding, or agreed to a subordinate's decision to initiate the criminal proceeding against Plaintiff, with knowledge that an existing complaint had been initiated against the subordinate investigating officer by the person he was investigating.

82.    Upon information and belief, Defendants had a policy and/or custom of maliciously prosecuting individuals despite the lack of probable cause. As a result of these policies and customs, Plaintiff was maliciously prosecuted even though she had committed no violation of the law.

83.    Upon information and belief, it was the policy and/or custom of Defendant City to inadequately hire, train, supervise, discipline and/or terminate their officers, staff, agents, and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents, and employees.

84.    As a result of these policies and customs, Defendant City, its staff, agents and employees of Defendant City believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned but would be tolerated.

85.    These policies and customs were known or should have been known by Defendants Cantrell and/or McGehee, who were each policymakers for the city, but who were nevertheless deliberately indifferent to the constitutional rights of arrestees and such decisions, policies and/or customs were the moving force leading to the constitutional violations of Plaintiff's rights alleged herein.

86.    In so acting, Defendant City abused its power and authority under the color of State and/or local law.

87.    Upon information and belief, in 2022-2023, Defendant City had a policy or routine practice of (1) alleging facts against persons to charge them with crimes they did not commit; and of (2) permitting officers to investigate and charge persons who either had pending complaints against the investigating officer or were involved in other civil complaints involving the officer.

88.    By reason of the foregoing, Plaintiff suffered physical and psychological injuries, traumatic stress, post-traumatic stress disorder, mental anguish, economic damages, damage to reputation, shame, humiliation, and indignity, and other damages.  All these injuries may be permanent.

## VII.    THIRD CAUSE OF ACTION
### Pursuant to 42 U.S.C. § 1983 (First Amendment Retaliation)

89.    Plaintiff re-urges and incorporates by reference the preceding paragraphs.

90.    "The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). To establish a claim of First Amendment retaliation a plaintiff must show: (1) the plaintiff was engaged in constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse

actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct. *Id.* at 258.

91.    Plaintiff's public statements made in her capacity as an elected city councilmember are fully protected by the First Amendment, which applies with force to political speech. Speech such as Plaintiff's on matters of public concern and petitions to the government, "occupy the core of the protection afforded by the First Amendment." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995).

92.    Defendants' retaliatory and punitive arrest of Plaintiff completely shut down Plaintiffs' speech on February 7, 2023, and for weeks afterward, and is sufficient to chill a person of ordinary firmness from continuing to engage in the protected activity.

93.    Plaintiff was directly targeted because she opposed the Mayor and DPD officials and officers during and outside city council meetings and advocated for city policies with which Defendants disagreed rendering their actions substantially motived against Plaintiff's protected activity. Plaintiff is therefore entitled to compensatory damages arising from the Defendants' actions as well as exemplary and punitive damages.

94.    Upon information and belief, Defendants had a policy and/or custom of retaliating against individuals who spoke publicly about matters of public concern and expressed views with which Defendants disagreed. As a result of these policies and customs, Plaintiff suffered retaliation at the hands of Defendants for speaking

publicly about matters of public concern and expressing views with which Defendants disagreed.

95.     Upon information and belief, it was the policy and/or custom of Defendant City to inadequately hire, train, supervise, discipline and/or terminate their officers, staff, agents, and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents, and employees.

96.     These policies and customs were known or should have been known by Defendants Cantrell and/or McGehee, who were each policymakers for the city, but who were nevertheless deliberately indifferent to the constitutional rights of individuals engaged in First Amendment protected activity and such policies and customs were the moving force leading to the constitutional violations of Plaintiff's rights alleged herein, which were clearly established and objectively unreasonable.

## VIII.  FOURTH CAUSE OF ACTION
### Pursuant to 42 U.S.C. § 1983 (Failure to Intervene)

97.     Plaintiff re-urges and incorporates by reference the preceding paragraphs.

98.     Defendants failed to intervene when Defendants knew or should have known that Plaintiff's constitutional rights were being violated.

99.     Defendants had a realistic opportunity to intervene on behalf of Plaintiff, whose constitutional rights were being violated in their presence.

100.    A reasonable person in the Defendants' position would know that Plaintiff's constitutional rights were being violated.

101.   By reason of Defendants' acts and omissions, Defendants acting under color of state law and within the scope of their authority, in gross and wanton disregard of Plaintiff's rights, deprived Plaintiff of her liberty when they failed to intervene to protect her from Defendants' unlawful arrest, in violation of Plaintiff's rights under the Fourth and Fourteenth Amendment of the United States Constitution.

102.   Upon information and belief, Defendants had a policy and/or custom of failing to intervene to protect citizens from unlawful arrests by police officers.  Thus, because of these policies and customs, Plaintiff was not protected from Defendants' unconstitutional actions.

103.   Upon information and belief, it was the policy and/or custom of Defendant City to inadequately hire, train, supervise, discipline and/or terminate their officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents, and employees.

104.   As a result of these policies and customs, Defendant City, its staff, agents and employees of Defendant City believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned but would be tolerated.

105.   These policies and customs were known or should have been known by Defendants Cantrell and/or McGehee, who were each policymakers for the city, but who were nevertheless deliberately indifferent to the constitutional rights of

arrestees and such policies and customs were the moving force leading to the constitutional violations of Plaintiff's rights alleged herein, which were clearly established and objectively unreasonable.

106.    By reason of the foregoing, Plaintiff suffered physical and psychological injuries, traumatic stress, post-traumatic stress disorder, mental anguish, economic damages including attorney's fees, damage to reputation, shame, humiliation, and indignity.  All these injuries may be permanent.

## IX.    FIFTH CAUSE OF ACTION
### Pursuant to 42 U.S.C. §1983 (Conspiracy)

107.    Plaintiff re-urges and incorporates by reference the preceding paragraphs.

108.    Defendants were acting under color of state law when they entered into a mutual agreement to deprive Plaintiff of her right to be free from unreasonable searches, seizures, detention, under the Fourth Amendment and to be free from retaliation for engaging in First Amendment protected speech, which are rights guaranteed to Plaintiff under the federal constitution.

109.    One or more Defendants committed an act in furtherance of the conspiracy to deprive Plaintiff of the aforementioned federally guaranteed rights, rendering all Defendants liable for said acts.

## X.    JURY REQUEST

Plaintiff requests a trial by jury.

## XI.    INJURY AND DAMAGES

As a result of Defendants' acts and omissions described herein, Plaintiff suffered and will continue to suffer economic injuries, severe emotional pain and suffering, physical distress, inconvenience, injury to reputation, loss of enjoyment of life, loss of liberty and free speech, and other pecuniary and non-pecuniary losses.

## PRAYER

WHEREFORE, Plaintiff respectfully requests that judgment be entered:

1. Awarding Plaintiff compensatory damages in a full and fair sum to be determined by a jury;

2. Awarding Plaintiff exemplary and punitive damages in an amount to be determined by a jury;

3. Awarding Plaintiff interest from July 30, 2023;

4. Awarding Plaintiff reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

5. Granting such other relief to which Plaintiff is entitled.


Dated:  June 28, 2023                          Respectfully submitted,

                                               */s/Ann "Ana" Marie Jordan*
                                               E. Leon Carter
                                               Texas Bar No. 03914300
                                               lcarter@carterarnett.com
                                               Ann "Ana" Marie Jordan
                                               Texas Bar No. 00790748
                                               ajordan@carterarnett.com
                                               Joshua J. Bennett
                                               Texas Bar No. 24059444
                                               jbennett@carterarnett.com

**CARTER ARNETT PLLC**
8150 N. Central Expressway, Suite 500
Dallas, Texas 75206
Telephone: (214) 550-8188
Facsimile: (214) 550-8185

**ATTORNEYS FOR PLAINTIFF
JENNIFER THOMPSON**