IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JENNIFER THOMPSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:23-CV-1441-N |
| | § | |
| ACY McGEHEE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant City of Godley's ("City") motion to dismiss [59] and Acy McGehee, Matthew Cantrell, Jeremy Arbuthnot, and Spencer Templer's motion to dismiss [60]. For the reasons below, the Court grants both motions and dismisses this case with prejudice.

## I. ORIGINS OF THE MOTION

This case arises out of the arrest of Thompson for the misdemeanor of tampering with a public record. Thompson is a former city council member of Godley, Texas, whose "public criticism of high-ranking City officials and the Godley Police Department was unrelenting." Pl.'s Second Am. Compl. ¶ 1 [55]. She was arrested for "manipulation of a public record" after editing an official agenda for a city council special meeting.

The City Secretary, Hill, had circulated an agenda for the December 27th meeting to the mayor, city administrator, city attorney, and city council members that Thompson

MEMORANDUM OPINION & ORDER – PAGE 1

believed to be incomplete, because it did not carry over items from the previous meeting. Pl.'s Second Am. Compl. ¶ 68.  The agenda contained a signed statement by Hill certifying the agenda.  *Id.*  Thompson edited the agenda to add the omitted items and sent it back to Hill, blind copying one of her co-councilmembers, Papenfuss.  *Id.* ¶¶ 69–70.  In addition to the carry-over agenda items, Thompson included two more items that were directed at city staff.  Pl.'s App., Ex. 1b-35 [39-1].[1]  Her edited agenda left the signature and certification of the City Secretary on the document unchanged.  Pl.'s Second Am. Compl. ¶ 69.  Hill did not respond to Thompson's email and did not post the edited agenda.  *Id.* ¶¶ 72–73.  Thompson sent the agenda at 5:45 p.m. on December 22nd, and City Hall was closed December 23rd–25th.  *Id.* ¶¶ 62, 69.  However, the Texas Open Meetings Act ("TOMA") deadline to post the agenda was December 24th.  *Id.* ¶ 62. Thompson drove to City Hall and "directed the City Secretary" to post her agenda. *Id.* ¶ 73.  Hill refused.  *Id.*

Papenfuss posted Thompson's version of the agenda on his alderman's Facebook page, unaware that Hill had not posted, approved, or certified the edited agenda.  *Id.* ¶ 75. The posted agenda appeared to be an official government document because it contained Hill's signature and the City of Godley seal that Thompson had left unchanged.  *Id.* Papenfuss removed the agenda from his Facebook page on December 24th, after learning that the Secretary had not posted or certified the edited agenda.  *Id.* ¶ 77.  Hill resigned

---

[1] The newly created agenda items were: "Discuss and take action on motions set by the council, which have not been abided by with city staff and officials," and "Discuss and take action concerning subordination, and the misuse of power and/or authority."  *Id.*

MEMORANDUM OPINION & ORDER – PAGE 2

from her position on December 26th, citing her arguments with Thompson as the reason for her resignation. *Id.* ¶ 79.

Godley police officers Cantrell, Arbuthnot, and Templer, initiated a criminal investigation into Thompson's actions. *Id.* ¶ 88. Initially, they investigated the incident as a forgery, but determined that the facts negated one of the elements of felony forgery. *Id.* ¶ 90. They instead began to investigate Thompson and Papenfuss for a misdemeanor, tampering with a government record, which makes it unlawful to knowingly make a false entry or alteration of a government record. *Id.* ¶ 92.

As part of the investigation, City Attorney Callaway contacted a Texas Municipal League attorney with whom Thompson had been corresponding, obtaining their email correspondence as part of the investigation. *Id.* ¶¶ 97–100. The correspondence, however, also included advice Thompson sought from the attorney earlier that month for how the city council could remove Callaway from his position. *Id.* Thompson alleges that this created a retaliatory animus for Callaway to "continue the pursuit of the malicious prosecution and false arrest" of Thompson. *Id.* ¶ 100.

In the investigation, the Johnson County Attorney's Office requested "written rules/policies/procedures that the city has with regard to who is responsible for creating and posting the agendas." *Id.* ¶ 102. No written policy was found. *Id.* ¶ 103.

The investigation was further complicated by the fact that Officer Arbuthnot, who had a pending sexual harassment complaint against Papenfuss, was the officer tasked with obtaining Papenfuss's statement. *Id.* ¶ 104. Arbuthnot left a message that did not mention the edited agenda, and Papenfuss did not return the message. *Id.* ¶¶ 106–07. He

MEMORANDUM OPINION & ORDER – PAGE 3

did not make any further attempt to contact Papenfuss for a statement. *Id.* Arbuthnot then was directed to obtain a statement from Thompson. *Id.* ¶ 108. However, both Arbuthnot and his assigning officer knew of the retaliation claim Thompson had submitted against Arbuthnot five days earlier. *Id.* at 109. He and two other officers had told Thompson to "stop publicly voicing her concerns" about allegations of retaliation for speech raised by the recently resigned police chief. *Id.* ¶¶ 53–55. Because of the pending complaint she had against Arbuthnot, Thompson asked what the requested meeting was regarding before she was willing to meet. *Id.* ¶ 111. Arbuthnot did not reply, and Thompson was not asked any questions relevant to the investigation. *Id.* ¶¶ 111–12. The officers used the failure of Thompson and Papenfuss to provide information, despite the lack of questioning and though they did not know an investigation was ongoing, to show that Thompson and Papenfuss were not cooperating and might have been withholding information. *Id.* ¶¶ 113–14.

Thompson submitted a number of contentious agenda items to the mayor for the February 7th city council meeting, including a motion to remove the police chief and interim city attorney, to install a city attorney of her choosing, and to mark the now-resigned city attorney, city administrator, and secretary as "unhireable." *Id.* ¶ 141. Thompson believed that with Papenfuss and another city councilmember who was on her side, she was likely to pass all her proposed items. *Id.* ¶ 142. On the morning of February 7th, an Assistant Johnson County Attorney reviewed Arbuthnot's probable cause affidavit and the warrant for Thompson's arrest and sent an email to Arbuthnot that said, "your warrant looks good to go." *Id.* ¶ 144. Arbuthnot then presented the affidavit

MEMORANDUM OPINION & ORDER – PAGE 4

to a magistrate, who issued a warrant for Thompson's arrest. *Id.* ¶¶ 148, 153. Thompson contends that the affidavit contained false information, because it characterized her action as a "forgery," despite the established lack of intent to deceive;[2] it omitted any facts of the conflicts of interest between Thompson and the police department; and it failed to mention that Papenfuss removed the agenda from his Facebook page when he learned it was not the official version. *Id.* ¶¶ 148–152. The warrant was entered into the system as a felony warrant, not misdemeanor. *Id.* ¶ 153. A patrol officer arrested Thompson in front of City Hall before the February 7th city council meeting.[3] *Id.* at ¶ 159. Thompson was taken into custody, and because the warrant had been incorrectly labeled a felony, she was therefore made to sit for a mugshot, strip-searched, and held overnight. *Id.* ¶ 168.

After Thompson was released on bond, the prosecutor declined to prosecute. *Id.* ¶ 169. After the mayor resigned, Cantrell apologized to the city council for Thompson's arrest, saying "when the DA rejected Jennifer Thompson's case, we should have stopped and left it alone, but we kept moving forward with it because we were told to get it done." *Id.* ¶ 173. Thompson filed this lawsuit alleging violations of her first amendment rights by the City of Godley, and retaliation, false arrest, malicious prosecution, conspiracy, and violation of due process by all defendants. *Id.* ¶¶ 177–237.

---

[2] The affidavit uses the term "forged" in the characterization of Thompson's retention of the City Secretary's name and signature certifying the document with Thompson's changes. Pl.'s App., Ex. 2-46–47.

[3] Thompson argues that this is in violation of the Department's General Order 7.3, which prohibits officers from selecting the time or place of arrest "solely to embarrass, oppress, or inconvenience the arrestee." *Id.* ¶ 160.

MEMORANDUM OPINION & ORDER – PAGE 5

## II. RULE 12(B)(6) LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). "When reviewing a motion to dismiss, a district court must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (internal quotation marks omitted). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

### III.  THOMPSON FAILS TO SHOW A POLICY TO SUPPORT HER SECTION 1983 CLAIMS

Thompson asserts section 1983 claims against the City of Godley for the actions of the individual defendants.  Thompson alleges that her constitutional deprivations arose from three city policies: (1) the mayor's directive to the police department to target and arrest Thompson for noncriminal conduct in retaliation of her First Amendment activity, (2) municipal custom of retaliation against citizens engaged in First Amendment activity, and (3) failure to supervise, discipline, and train police on the limitations imposed by the First Amendment.  Pl.'s Resp. Br. 2 [70].

### A.  Monell *Liability Standard*

Section 1983 does not permit vicarious liability for municipalities.  A "municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978) (emphasis in original).  Municipality or corporate liability under section 1983 requires proof of three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694).  If plaintiffs do not sufficiently plead all three elements, they run the risk of collapsing their claim into one of *respondeat superior* liability.  *Id.* at 580.

There are two ways of defining an "official custom or policy" for the purposes of *Monell* liability:

MEMORANDUM OPINION & ORDER – PAGE 7

1.   A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.   A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.  Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) (quoting *Bennett v. City of Slidell*, 735

F.2d 861, 862 (5th Cir. 1984) (en banc)).

### B. Thompson fails to establish an "official policy or custom" under Monell.

**1. Thompson fails to plead facts sufficient to show a persistent custom of retaliation for speech.** — First, Thompson fails to establish a persistent policy, practice or custom.  She alleges an ongoing custom of retaliation for speech, demonstrated by "obvious examples," which she describes as the "initiation of sham investigations . . . into innocent conduct by Jordan and Papenfuss."  Pl.'s Second Am. Compl. ¶¶ 196–97.  However, while Thompson alleges that the allegations were "baseless," it is undisputed that Jordan had a race discrimination claim filed against him by one of his subordinates and Papenfuss had three sexual harassment claims filed against him.  Id. ¶¶ 22–23.  Thompson's assertion here that the claims were "baseless" and that "sham investigations" were initiated "into innocent conduct" is conclusory, and she does not plead facts to support the baselessness of either claim.[4]   An investigation into discrimination and

---

[4]  Thompson alleges only that Jordan claimed after his resignation that he "could show he had not engaged in any racially discriminatory conduct" to prove the sham nature of the racial discrimination claim.  *Id.* ¶ 24.  This alone is insufficient to plead facts establishing that the allegation was false.  For the sexual harassment claim against Papenfuss,

harassment claims, neither of which appear to have been proved or disproved, does not establish an ongoing custom of retaliation for speech.

 **2. *The single decision exception does not apply because Thompson cannot show that the constitutional harm was the obvious result of the alleged policy.* —** Because Thompson fails to establish a persistent practice or custom, the Court analyzes her assertion of municipal liability under the "extremely narrow" and "rare" single decision exception. *Liggins v. Duncanville*, 52 F.4th 953, 955 (5th Cir. 2022). For the single decision exception to apply, "the constitutional harm in question must've been the 'plainly obvious' consequence of the actor's single decision." *Id.*

 Thompson alleges that the single decision of the mayor, "to deprive Plaintiff of her federal rights by directing her arrest" fits the single decision exception for two reasons (1) because Thompson's conduct "was not criminal in nature" and (2) because the individual defendants timed her arrest to be "before the city council meeting to ensure her absence from the city council meeting, with intent to suppress and chill her speech." Pl.'s Resp. Br. 5. Because, as described below, the arrest did not lack probable cause, Thompson's argument that her conduct was not criminal in nature is unavailing. Her second argument, that the arrest was orchestrated to suppress her speech, is supported only by the

---

Plaintiff's pleading shows that there was a specific instance where the three officers were uncomfortable with Papenfuss's reaction to a joke shared in their presence. *Id.* ¶ 42. Plaintiff's argument that others, including Papenfuss's wife and Cantrell, also laughed at the joke, *Id.* ¶¶ 43–44, does not establish facts to plead the baselessness of the sexual harassment allegation.

MEMORANDUM OPINION & ORDER – PAGE 9

timing of her arrest prior to a city council meeting; however, the series of actions she alleges breaks the chain of causation.

Thompson's complaint alleges a series of actions by multiple people unconnected to any retaliatory motive that led to the timing of her arrest. Thompson establishes that the Johnson County Attorney's Office had been contacted and began working with the police department on December 27th. Pl.'s Second Am. Compl. ¶ 93. The Assistant Johnson County Attorney was asked to review the probable cause affidavit on December 29th. *Id.* ¶ 124. She approved the warrant at midday on February 7th, the day of Thompson's arrest. *Id.* ¶ 144.[5] Officer Arbuthnot then presented the affidavit to the magistrate, who approved and issued the warrant on that same day. *Id.* ¶¶ 148, 153. An officer unconnected with the retaliatory motives was then assigned to execute the arrest. *Id.* ¶ 155.[6] He was directed to arrest her at her residence. *Id.* ¶ 158. However, the officer arrested her in front of City Hall instead, which Thompson argues was "with deliberate indifference to Plaintiff's constitutional rights" because the arrest was done in a "highly public and unnecessarily embarrassing manner to punish her for her speech and to chill her speech." *Id.* ¶¶ 159, 162. However, Thompson argues the officer's decision to arrest

---

[5] Thompson alleges that she believes "at some point on or before [that date], Cantrell or Arbuthnot, at the Mayor's direction, made contact with [and] prompted the prosecutor to finish the review on or before February 7." *Id.* at ¶ 143.

[6] Thompson argues that it was within Officer Templer's own self-interest to arrest her because it "cement[ed] protection, loyalty, and praise from his supervisors." *Id.* ¶ 164. Thompson's pleading does not support this argument. Her pleadings show merely that Templer followed a directive of his supervisors to perform a role that was part of his job to make an arrest pursuant to a signed arrest warrant. *Id.* ¶¶ 155–58.

her at City Hall was directly contrary to department policy and was due to the officer's inadequate training. *Id.* ¶¶ 156, 160.

The Assistant County Attorney's delay in approving the affidavit, the timing of the magistrate's approval, and the officer's failure to follow orders all break the chain of causation connecting any action potentially attributable to the city to the timing of her arrest.

Thompson is unable to make the requisite showing that the mayor's arguable policymaking action of telling the police to pursue action against Thompson led to the timing of her arrest before the council meeting.[7]  Therefore, Thompson fails to show that the constitutional harm, the suppression of free speech, was the "plainly obvious" consequence of the mayor's single decision to have the police department investigate her for criminal activity, and the facts do not meet the standard to establish the single decision exception.

   ***3. A failure to train exception for the public nature of her arrest fails because Thompson is unable to show that it was foreseeable.*** — Finally, to the extent that Thompson attempts to weave a single incident exception for the public nature of her arrest by the officer, her arguments are unavailing.  A failure to train exception is a high bar.  The Fifth Circuit "has been wary of" finding municipal liability for a failure to train claim based on a single incident.  *Pineda v. Houston*, 2191 F.3d 325, 334–35 (5th Cir. 2002).  Single violations create liability in only the most egregious cases, such as where

---

[7]  It is unclear whether the mayor would constitute a policymaker under the *Monell* framework here.  However, the Court need not determine whether he is a policymaker because Thompson fails to establish a policy under *Monell*.

MEMORANDUM OPINION & ORDER – PAGE 11

the dangerous "proclivities" of an officer impute knowledge to the government that existing training is insufficient, *Valle v. Houston*, 613 F.3d 536, 549 (2010) (citing *Brown v. Bryan Cty.*, 219 F.3d 450, 462 (5th Cir. 2000)), or where an "obvious need" for training exists, but the officer "was provided no training whatsoever." *Peña v. Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018) (citations omitted).

Thompson merely alleges that the officer was "young" and "inexperienced" and "inadequately trained on the limits of his authority as established by the First Amendment." Pl.'s Second Am. Compl. ¶¶ 155–56. She does not allege that he was not trained at all or that he had any sort of proclivity that would put the department on notice that he needed additional training. Therefore, because there is no evidence to support that the officer arresting her publicly was a highly predictable consequence of failure to train, the single incident exception does not apply. Likewise, because Thompson argues the officer was selected for her arrest because he was "unwilling to push back on his superiors," it cannot follow that his departure from his order to arrest her at home was a "plainly obvious" result. *Id.* ¶ 155.

Because Thompson has failed to show a policy under *Monell*, her section 1983 claims against the City fail.

### IV. THE COURT FINDS PROBABLE CAUSE FOR THOMPSON'S ARREST

Thompson's retaliatory arrest, malicious prosecution, and false arrest claims against all defendants rely on her assertion that there was no probable cause for her arrest.

MEMORANDUM OPINION & ORDER – PAGE 12

For the reasons below, the Court finds that there was sufficient probable cause for her arrest.  Therefore, these claims fail as a matter of law.

"The Fourth Amendment requires that an arrest be supported by a properly issued warrant or probable cause." *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001). Under a retaliatory arrest claim, a plaintiff "must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019).  *Nieves* creates an exception to the probable cause requirement "when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 406.

### A.  The Nieves *exception does not apply.*

To meet the "narrow" *Nieves* exception, a plaintiff must produce objective evidence to prove that her arrest occurred in "circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.*  The Supreme Court recently clarified in *Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024), that the *Nieves* exception does not require "virtually identical and identifiable comparators." But the concurrence to that case elaborated that the Court's example of jaywalking as the "type of relatively benign offense that is 'endemic but rarely results in arrest'" helps "to illustrate the thinness of [the *Nieves*] exception." *Id.* at 665 (Alito, J., concurring). Thompson pleads that she has presented objective evidence that "the Godley Police Department has never before enforced the non-violent, misdemeanor statute under which Plaintiff was arrested by obtaining an arrest warrant, rather than a summons," and that

MEMORANDUM OPINION & ORDER – PAGE 13

under similar circumstances, Papenfuss was not arrested though he "was similarly situated to Plaintiff" as the one who "published" the altered agenda.

The Court finds that Thompson has not met the threshold to present objective evidence the *Nieves* exception requires. She has not pled that the misdemeanor statute has not been enforced, but relies on a distinction between arrest warrants and summons that introduces an element not present in *Nieves*. Thompson's pleading is unlike the objective evidence produced in *Gonzalez*, where the plaintiff at the motion to dismiss stage had reviewed a decade of misdemeanor and felony data and established that the statute at issue had never been used for the purpose it was used for in that case. Nor has she pled anything to establish that her action is the sort of offense that is "endemic but rarely results in arrest." *Gonzalez*, 602 U.S. 665 (Alito, J., concurring).

Secondly, the argument that Papenfuss is "similarly situated" fails for two reasons. First, Thompson has not alleged that Papenfuss was involved in the editing of the agenda, which is an element necessary under the statute. Second, even if Papenfuss had been able to be arrested under the statute, Thompson's pleading alleges that the defendants were similarly targeting him in retaliation for his speech. Pl.'s Second Am. Compl. ¶ 50. Because there was an identical alleged retaliatory motive, and she alleges he was engaged in the same protected speech as she was, he cannot serve as a comparator to show that the defendants did not arrest someone against whom they lacked the retaliatory motive.

MEMORANDUM OPINION & ORDER – PAGE 14

Therefore, because Thompson has not produced objective evidence that she was arrested when other similarly situated individuals not engaged in the same sort of protected speech had not been, she fails to meet the narrow *Nieves* exception.

### B. Thompson has failed to establish that her arrest lacked probable cause.

Because Thompson fails to establish that this case meets the standard for the *Nieves* exception, the Court next turns to whether she has adequately pled an absence of probable cause. The independent intermediary rule provides that "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for a false arrest, insulating the initiating party." *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994). However, the *Franks* exception "holds that an officer cannot avoid liability where a warrant affidavit (1) contains false statements or material omissions (2) made with at least 'reckless disregard for the truth' that (3) were 'necessary to the finding of probable cause'" by the independent intermediary. *Hughes v. Garcia*, 100 F.4th 611, 619 (5th Cir. 2024) (quoting *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)).

Here, the warrant for Thompson's arrest was issued by a magistrate judge, an independent intermediary. Thompson argues that the intermediate intermediary rule is inapplicable because the probable cause affidavit contained "false statements and omitted material facts." Pl.'s Resp. Br. 14. However, because the Court finds Thompson has failed to make a substantial preliminary showing that the affidavit was based on a false statement, the *Franks* doctrine is inapplicable, and the Court finds the independent intermediary rule establishes probable cause.

MEMORANDUM OPINION & ORDER – PAGE 15

Thompson alleges that Arbuthnot's affidavit contained both false statements and material omissions that misled the magistrate. The Court addresses each in turn.

***1. Thompson fails to show a materially false statement in the affidavit.*** — The Court finds that Thompson does not make a substantial showing that a false statement was intentionally and knowingly, or recklessly included in the affidavit. She alleges that there was falsity in (1) the characterization of her action as "forging," (2) the implication that there was a policy in Godley that only the secretary had authority over the agenda, (3) that Hill had initiated the complaint against Thompson, and (4) that Thompson had not provided what she wanted on the agenda for Hill to include.

First, it is undisputed that Thompson altered the official agenda and retained the certifying signature of the city secretary on the altered document. Though she sent it to the city secretary, intending for her to adopt the document and re-certify it, she sent the altered document with the no longer certified signature to Papenfuss by blind copying him on the email. Her action in blind copying Papenfuss led to the publication of the altered document, and it would be reasonable under a probable cause standard that her action demonstrated intent that he publish it. The affidavit alleges only that Thompson "forged" Hill's name and signature by leaving it unaltered on a document that no longer had been certified by Hill.[8]  This does not misrepresent the action in the way that

_____

[8]  Thompson points to the use of the word "forged" that references her retention of Hill's signature three times in the affidavit. Pl.'s Resp. Br. 15. The affidavit says Thompson had "forged Mrs. Hill[']s name on the document and added items to the agenda," and that she then "sent Mrs. Hill an email with the forged and changed agenda that she created" and that she instructed Hill to post the "agenda document that Mrs. Thompson created/forged." Pl.'s App., Ex. 2-46–47.

MEMORANDUM OPINION & ORDER – PAGE 16

Thompson alleges.[9]  She argues that because the district attorney had already ruled out

felony forgery, the officer's use of the term "forged" here was incorrect.  However, this

affidavit is not making a case for forgery, and her retention of the signature on the

document sufficiently meets the definition Thompson uses for "forge" as "to alter . . . any

writing so that it purports to be the act of another who did not authorize that act."  Pl.'s

Resp. Br. 16 n.3 (citing TEX. PENAL CODE § 32.21(a)(1)(A)(i)).    The document

Thompson sent did "appear[] to be a genuine government record" that had the "City of

Godley Seal and Mrs. Hill[']s electronic Signature" as the affidavit says.  Pl.'s App., Ex.

2-46–47.

Further, Thompson argues that no "reasonably competent officer" could have used

the word "forged" because she "did not intend to deceive the Secretary because she

disclosed to the Secretary and others that she had added items and directed the Secretary

to post them."  Pl.'s Resp. Br. 16 (emphasis omitted).  However, the affidavit does not

allege that she intended to deceive the Secretary, but that the people of Godley were

deceived by this document when it was posted to online forums.  *See* Pl.'s App., Ex. 2-

46–47 (The "edited document on . . . Papenfuss['] Facebook page . . . misinformed

people of Godley.")  Though she was not the one to post the altered document publicly,

---

[9]  Thompson argues that the use of "forged" is "misleading and knowingly false" because
it "falsely suggest[s] that Plaintiff created an entirely *new document* from whole cloth by
adding *false* information, and then added the Secretary's signature without the
Secretary's knowledge."  Pl.'s Resp. Br. 15–16 (emphasis in original).  The Court finds
that the affidavit does not make such an implication, because it directly establishes the
opposite.  The affidavit states: "Mrs. Hill related that she asked Mrs. Thompson if she
had edited her original City Council Meeting Agenda document. Mrs. Hill related that
Mrs. Thompson advised Mrs. Hill[,] yes, she had."  Pl.'s App., Ex. 2-46–47.

MEMORANDUM OPINION & ORDER – PAGE 17

her action in blind copying Papenfuss led, intentionally or not, to him publishing the altered agenda with Hill's signature. The Court, therefore, finds that the affidavit does not make a false statement by using the word "forged" to describe Hill's signature on an agenda that she did not make or approve.

Second, Thompson argues that the sentence "Mrs. Hill advised she is the only one who creates and publishes the City Council Agenda Meeting Document" is "knowingly false" because Arbuthnot "was aware that no local ordinance delegated sole responsibility" to the secretary. Pl.'s Resp. Br. 15. However, these statements can both be true. Thompson's complaint alleges only that no written policy was able to be found "regarding creating and posting the agenda." Pl.'s Second Am. Compl. ¶ 103. The mayor had informed the officers that "to the best of his knowledge" the city secretary "was the only one responsible for assembling items [and creating] the City Agenda," as had Hill. Pl.'s Resp. Br. 16 (quoting Pl.'s App., Ex. 2-46). The affidavit does not allege that there was a local ordinance delegating sole responsibility; it describes only Hill's understanding of her role. Likewise, Arbuthnot's knowledge that no written ordinance was found does not negate Hill's understanding. In the absence of a written policy and no contrary evidence, the inclusion of these statements to show that the officers believed Thompson could not unilaterally publish an updated agenda is not "materially false."

Next, Thompson alleges that it was materially false that Hill initiated the complaint. For this, she cites the fact that Hill's resignation email "made no reference to any desire by the City Secretary to press criminal charges." Pl.'s Second Am. Compl. ¶ 79. Thompson also argues that Hill could not have been the complainant

MEMORANDUM OPINION & ORDER – PAGE 18

"because she did not initiate the contact" with the officers.  Pl.'s Resp. Br. 16.  However, in Thompson's appendix to her response, she includes the agreement to prosecute, signed by Hill, saying that she wished to file criminal charges against Thompson.  Pl.'s App., Ex. 1a-10.  Likewise, it is undisputed that Hill reported her conflict with Thompson regarding the agenda to the mayor and city attorney and resigned because of it.  Pl.'s Second Am. Compl. ¶ 79.  Thompson's belief that the mayor may have initiated contact with officers does not prove that Hill is not the complainant.[10]  Therefore, the Court finds that there is not evidence to show that it was materially false to state that Hill had initiated the complaint.

Finally, Thompson argues that the statement "Thompson was not providing what she accurately wanted" on the agenda was false because the emails the officers had "clearly demonstrated Plaintiff had communicated to the Secretary exactly what she believed should be included in the agenda before and after the Secretary posted the incomplete agenda."  Pl.'s Resp. Br. 15.  However, Thompson's own pleadings show that after back-and-forth between herself and the secretary, she did not provide the list of carry-over items for the agenda until after Hill had circulated the agenda.  Pl.'s Second

---

[10]  Thompson herself argues that under Texas law, the mayor's role requires him to "inspect the conduct of each subordinate municipal officer and cause any violation of duty to be prosecuted and punished" and to "order the arrest of a person who violates state law or a municipal ordinance."  Pl.'s Resp. Br. 3–4.  Because this is an official power of his position, his alleged escalation of the complaint to the officers does not make him the complainant.

MEMORANDUM OPINION & ORDER – PAGE 19

Am. Compl. ¶¶ 67–68.[11]    Therefore, the Court also finds that this was not a false statement.

### 2. Thompson's alleged omissions do not establish falsity in the affidavit. —

Thompson further alleges that the following omissions established a material falsity in the affidavit because it did not include: (1) the fact that the mayor had prompted the officers to pursue action against Thompson, (2) that the agenda items Thompson added were improperly omitted by Hill, (3) that Thompson's additions were added prior to the TOMA deadline, (4) that Thompson was authorized to submit proposed changes, (5) that Thompson's additions were made to a "copy" of the agenda, and (6) that Thompson never posted or directed anyone to post the altered agenda.

First, Thompson's argument that the mayor had prompted the officers to pursue action against her is belied by her own assertion that "the Mayor alone . . . [can] cause any violation of duty to be prosecuted and punished," and that "state law grants to the Mayor . . . the power to 'order the arrest of a person who violates a state law or a municipal ordinance.'" Pl.'s Resp. Br. 3–4. The mayor prompting the officers to pursue action falls within what Thompson has pleaded is his purview, and therefore does not establish any omission that creates material falsity in the affidavit.

---

[11] Thompson asserts that it was not her responsibility to provide the list, as typically the secretary would use the minutes from the previous meeting or would have received the information from the city attorney. *Id.* ¶¶ 66–67. Nevertheless, the emails show that the secretary had asked the city councilmembers to send any changes by 5:00 p.m. and asked Thompson to send her a specific list of the items she wanted added, and when Hill posted the agenda at 5:21 p.m., she had not received the list from Thompson yet. *See* Pl.'s App., Ex. 1b-32–35.

MEMORANDUM OPINION & ORDER – PAGE 20

Likewise, Thompson's assertion that the added items "had all been improperly omitted" is belied by her own pleadings.  While she did add a number of carry-over items to the agenda, she also added two additional agenda items that appeared to be directed toward Hill and to use her position to publicly reprimand her.[12]

The Court does not find the TOMA deadline to be materially relevant, because the fact that there was still time for official changes to be made does not change the facts of this case.  And Thompson's authority to submit proposed changes to the agenda before the TOMA deadline was expired does not materially alter the facts of the affidavit.  The argument that the changes were made to a "copy" of the agenda, and not the official agenda posted at City Hall is likewise unavailing because the issue the affidavit seeks to prove is that Thompson made alterations to a document that appeared to be an official government record, left a signature certifying it unchanged, and caused it to be circulated to the public.

Finally, the argument that Thompson never posted or directed anyone, other than Hill, to post the altered agenda was not a material omission.  The affidavit does not allege that Thompson posted or directed anyone to post the agenda.  It states that Papenfuss "posted the edited document on his Alderman Michael Papenfuss Facebook page."  Pl.'s App., Ex. 2-47.

---

[12]    Thompson added two agenda items that were responsive to the back-and-forth between Hill and herself: (1) "Discuss and take action on motions set by the council, which have not been abided by with city staff and officials," and (2) "Discuss and take action concerning subordination, and the misuse of power and/or authority."  Pl.'s App., Ex. 1b-35.

MEMORANDUM OPINION & ORDER – PAGE 21

Because the Court finds that Thompson has not made a substantial preliminary showing that a false statement was knowingly and intentionally or with reckless disregard included in the affidavit, the Court need not determine whether any such alleged false statements were necessary to the magistrate's independent finding of probable cause. Therefore, because Thompson does not meet the *Franks* standard for a challenge of the veracity of an affidavit, the independent intermediary doctrine applies.

Because probable cause existed for Thompson's arrest, the Court dismisses Thompson's retaliatory arrest, malicious prosecution, and false arrest claims.

### V.  THE SINGLE-ENTITY DOCTRINE BARS THOMPSON'S CONSPIRACY CLAIM

Thompson alleges that the City and its current and former employees conspired with each other to deprive her of her constitutional rights.  Pl.'s Second Am. Compl. ¶¶ 229–31.  She claims that the conspiracy involved Mayor McGehee, Police Chief Cantrell, and Officers Arbuthnot and Templer.  Pl.'s Second Am. Compl. ¶¶ 229–231 ("Defendants . . . entered into a mutual agreement.")  In her response to the City's motion, Thompson adds several people to her list of people involved in the conspiracy. *See* Pl.'s Resp. Br. 16 ("Here, Plaintiff alleges the Mayor and City Council members conspired with current and former City officers, including the Police Chief and police officers, the Police Department, City Administrator, City Attorney, and City Secretary.") The Court finds that Thompson has not properly pled any facts to support the addition of

the City Administrator.[13]  Likewise, the Court finds that the City Secretary is merely the complainant and was no longer employed by the City nor did she participate in the decisionmaking that led to Thompson's arrest, so could not be considered a part of the alleged conspiracy.  It is unclear what other city council members nor which additional current and former officers Thompson means to include, so the Court disposes of those members of the alleged conspiracy.

"A conspiracy necessarily involves two or more persons; it is elementary that an entity cannot conspire with itself." *Burns v. Harris Co. Bail Bond Bd.*, 139 F.3d 513, 502 (5th Cir. 1998) (citing *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994)).  The City is such a single legal entity.  All the defendants worked for the City and were acting in their capacity as city officials or employees.  *See* Pl.'s Second Am. Compl. ¶¶ 4–8, 230. Thompson argues that the single entity should be limited to a singular department rather than allowing a whole city to constitute a "single legal entity."  She does not support this argument with any legal precedent, and the Court finds that there is necessary functional overlap between the mayor and city attorney and the police department here.  The Court does not make a determination on whether, as Thompson argues would be absurd, the fire department and the city transportation office may in some cases be treated as different entities.  However, as here, where a police department worked with a mayor who by law

---

[13]  The City Administrator resigned prior to any of the relevant action here, and it's not clear how he is involved in the alleged conspiracy.  Pl.'s Second Am. Compl. ¶ 57.  It appears that this may be a reference to Thompson's allegation of an ongoing policy of retaliation against speech by investigating discrimination and harassment claims against Jordan and Papenfuss.  *Id.* ¶ 22.  The Court has explained above that a legitimate investigation into such claims does not demonstrate a policy of retaliation.

has been delegated oversight of the department, and a city attorney weighed in on matters of law, the Court finds that the City and its employees are a single entity under the doctrine.

An "exception to the intracorporate conspiracy doctrine exists where corporate employees act for their own personal purposes." *Benningfield v. Houston*, 157 F.3d 369, 379 (5th Cir. 1998). This requires a showing of "an interest that was truly 'independent'" of any interest by the City. *H & B Equip. Co. v. Int. Harvester Co.*, 577 F.2d 239, 244 (5th Cir. 1978). Here, the alleged personal interest of the individual defendants is insufficient to show a true independence from interest by the City. Thompson argues that the defendants all had reason to have a personal animus against her because her "public criticism" of them was "unrelenting." Pl.'s Second Am. Compl. ¶ 1. Exceptions have been found where employees have economic "interests in economic entities separate from the principal defendant," *H & B Equip.*, 577 F.2d at 244, or where the corporate defendants' action was to foreclose their own criminal liability. *See Perkins v. Gregg Cty.*, 1995 WL 836051, at *6 (E.D. Tex. 1995). However, extending the doctrine to where the plaintiff can prove the defendant had reason to dislike them without more would swallow the doctrine. *See Broich v. Inc. Vill. of Southampton*, 650 F.Supp.2d 234, 246 (E.D.N.Y. 2009) ("[P]ersonal bias or prejudice alone[] does not support application of the exception; rather there must be some other personal interest or stake alleged on the part of the individual defendants.").

Additionally, while Thompson can show that her action against the defendants may have risen beyond personal animus when she sought to have the police chief and city

MEMORANDUM OPINION & ORDER – PAGE 24

attorney removed at the February 7th meeting, that motive only arose when she submitted her agenda items on February 1st, long after the wheels had been in motion for the investigation, and after any influence had been exerted by either.  *Id.* at ¶¶ 141–42.

Because the single-entity doctrine bars Thompson's conspiracy claim, and no exception applies, these claims fail as a matter of law.

### CONCLUSION

Thompson's claims fail as a matter of law because she has failed to establish a policy under *Monell* for section 1983 liability, the Court has found that there was sufficient probable cause for Thompson's arrest warrant, and the single-entity doctrine bars her conspiracy claims.  The Court grants both the City of Godley and the individual defendants' motions to dismiss.  Plaintiff has amended twice already in response to similar motions to dismiss; therefore, the Court denies leave to amend and dismisses this case with prejudice.

Signed January 7, 2025.

David C. Godbey

Chief United States District Judge

MEMORANDUM OPINION & ORDER – PAGE 25